UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAY LEE,<br><br>                Plaintiff,<br><br>         v.<br><br>CALVIN O. BUTTS, SAMUEL DANIEL,<br>JOHN MAHER, PAULETTE SENIOR,<br>and CARL KIRTON,<br><br>                Defendants. | 11 Civ. 2358 (LBS)(AJP)<br><br>MEMORANDUM & ORDER |

SAND, J.

    Plaintiff Gay Lee brings this action, again Defendant Calvin O. Butts, for damages and attorney's fees pursuant to, <u>inter alia</u>, 42 U.S.C. § 1981 and the Employment Retirement Income Security Act, 29 U.S.C. § 1001 <u>et seq.</u> ("ERISA"). Lee alleges, essentially, that she was wrongfully terminated and that the money she contributed to her employer-administered pension plan was wrongfully misappropriated. Butts moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth, Butts' motion is granted in part and denied in part.

I.   BACKGROUND

    From 2002 until her termination in 2010, Lee was employed by North General Hospital ("NGH"), serving first as Program Director and later as Executive Director of the North General AIDS Housing Development Fund Corporation (the "Corporation"). Compl. ¶ 1. The Corporation is a non-profit entity wholly

1

owned by NGH, whose mission is to provide supported housing and services to people affected by HIV/AIDS. Butts Aff. 3. Defendant Calvin O. Butts, long the Pastor of the Abyssinian Baptist Church, served as the Chairman of NGH's Board of Trustees during Lee's tenure with NGH. Butts Aff. 6. This case remains pending solely against Butts. See Stipulation of Dismissal Against Defendants John Maher and Carl Kirton With Prejudice (Dkt. No. 105).

In the summer of 2010, NGH filed for bankruptcy. Id. ¶ 12. Following the bankruptcy, Lee sought information from NGH about her NGH-administered pension plan, to which Lee had, between 2003 and 2007, "contributed not less than $45,837." Id. ¶¶ 11-12. According to Lee, NGH could not or would not answer her questions. Id. ¶ 12. Also in 2010, NGH terminated, then reinstated, then again terminated Lee's health insurance despite continued premium deductions from Lee's salary. Id. ¶ 15. Then, in the winter of the 2010, Lee was fired. Id. ¶ 21. The circumstances surrounding Lee's termination are as follows.

Lee claims that she objected to how NGH was handling—or, rather, neglecting—the Corporation. She was particularly concerned about NGH's neglect of a Corporation-managed building at 1997 Lexington Avenue used to house AIDS-infected indigents (the "Facility"). Id. ¶ 16. As Lee understood it at the time, this neglect was intentional: NGH sought to transfer the Facility to the Abyssinian Development Corporation, founded and

2

controlled by Butts, for conversion into for-profit residential housing. Id. In an effort to keep the Facility running, Lee took a number of measures. First, believing that the Corporation's funds—which came from the City of New York Human Resources Administration and the U.S. Department of Housing and Urban Development—were being improperly used to satisfy NGH's debts, Lee, with the approval of the Corporation's (but not NGH's) Board, established new bank accounts in the Corporation's name. Cho. Aff. Ex. L, at 10. Second, Lee filed suit in the United States Bankruptcy Court for the Southern District of New York in order to block the transfer. Compl. ¶ 18. In November, Lee was fired. Cho. Aff. Ex. B. The reason, according to Defendants, was Lee's decision to open the bank accounts without the NGH Board's permission, which, according to NGH's counsel was "a breach of [Lee's] fiduciary obligations to both the Corporation and the hospital." Butts Aff. Ex. F. On December 20, 2010, the suit in bankruptcy court was dismissed without prejudice. Cho. Aff. Ex. Q.

Lee makes two basic claims. First, that she was wrongfully terminated and subjected to retaliation for engaging in legally protected activity. Second, that Defendants misappropriated money that Lee made to her employer-administered pension plan and improperly terminated her health insurance. Compl. ¶¶ 8-9.

II. STANDARD OF REVIEW

3

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." Gallo v. Predential Residential Servs., Ltd. P'Ship, 22 F.3d 1219, 1223 (2d Cir. 1994). A material fact is one that might affect the outcome of a suit under governing law. Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A non-moving party can defeat a properly asserted summary judgment motion by demonstrating the existence of a material issue of fact necessitating a trial on the merits. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). While all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought, Anderson, 477 U.S. at 249, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indust. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

4

We emphasize that the "function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Elec. Boat Corp., 609 F.3d 537 (2d Cir. 2010). We further note that in discrimination cases "[a] trial court must be cautious about granting summary judgment to an employer when...its intent is at issue...[b]ecause writings directly supporting a claim of intentional discrimination are rarely, if ever, found." Gallo, 22 F.3d at 1224 (internal citations omitted). Yet summary judgment remains available "even in the fact-intensive context of discrimination cases," Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001), when the evidence only "gives rise to mere speculation and conjecture" rather than a "reasonable inference of discrimination," Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999).

III. DISCUSSION

    A.  Lee's 42 U.S.C. § 1981, New York State Human Rights Law, and New York City Human Rights Law Claims

These claims all relate to Lee's termination, which she alleges was improper and Butts counters was proper. Lee argues, essentially, that she was terminated because she is an African-American, lesbian woman. That is, Lee asserts that she was subject to race- and sexual-orientation-based

discrimination in violation the New York State Human Rights Law, N.Y. Exec. Law § 269 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("NYCHRL"), and 42 U.S.C. § 1981.

Butts counters, first, that Lee has failed to establish a prima facie case of discrimination and retaliation. Def.'s Mem. Supp. Summ. J. ("Def. Mem.") 9-10, 14-15. And regardless, Butts asserts, the record shows that there existed legitimate, non-discriminatory reasons for Lee's termination and, indeed, for all actions taken by Lee's employer. Id. Second, Butts argues that Lee's § 1981 claim must fail because an individual cannot be sued under § 1981. Id. at 12-13.

Butts' second argument is meritless: The Second Circuit has held, unambiguously, that "individuals may be held liable under § 1981." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000). No matter; this Court agrees with Butts' first argument. Even though Lee, as the non-movant, does not bear the burden of persuasion, there is simply nothing in the record that could plausibly support a claim for discrimination based on race or sexual orientation.

This Court has "waded into the underlying papers to determine if [Butts] presented enough to warrant summary judgment." Mr. Water Heater Enters. v. 1-800-Hot Water Heater, LLC, 648 F. Supp. 2d 576, 580-581 (S.D.N.Y. 2009). He has. Although Lee's burden at this stage is de minimis, Abdu-Brisson

6

v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d. Cir. 2001) (internal quotations and citations marks omitted), she has failed to make out a prima facie discrimination claim under the NYSHRL and the NYCHRL, both of which are governed by the same standards as Title VII. See Knight v. New York City Hous. Auth., No. 03 Civ. 2746, 2007 U.S. Dist. LEXIS 9148, at *29 (S.D.N.Y. Jan. 31, 2007).

Lee is a member of a protected class, she is qualified for the position in question, and she suffered an adverse employment action. See Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001) (listing Title VII elements). But she has presented not a shred of evidence that her discharge "occurred under circumstances giving rise to an inference of discrimination." Id. To the contrary: the record is clear that whatever grievance Lee might have against Butts for wrongful termination and retaliation has everything to do with the factual circumstances outlined in Part I—Lee's objections to NGH's handling of the Corporation, her opening of the bank account, etc.—and nothing whatsoever to do with Lee's race or sexual orientation.

For much the same reason, Lee's 42 U.S.C. § 1981 claim also fails. See Burbank v. Office of the AG, 240 F. Supp. 2d 167, 175 (D. Conn. 2003) (holding that plaintiff must offer evidence that a defendant's "actions against [her] were

7

motivated by [] discriminatory animus towards the members of [a] racially protected class.").

Accordingly, Butts' motion for summary judgment dismissing Lee's 42 U.S.C. § 1981, NYSHRL, and NYCHRL claims is hereby granted.

B.  § 664 Claim

Butts argues that Lee's prayer for relief under 18 U.S.C. § 664 must be dismissed because § 664 does not provide for a private right of action. Lee argues that this argument is "moot because [] Lee has not purported to assert a claim under § 664." Pl.'s Mem. Law Opp'n Mot. Summ. J. ("Pl.'s Mem.") 19. For the sake of completeness and clarity, we briefly address this issue.

18 U.S.C. § 664 "makes it an offense for a person to embezzle or convert to his own use any funds of an employee pension benefit plan." United States v. Rivlin, No. 07 Cr. 524, 2007 U.S. Dist. LEXIS 89323, at *1 (S.D.N.Y. Dec. 5, 2007). This is a federal penal statute and Butts is correct that courts have declined to permit attendant claims for civil liability. See, e.g., NYSA-ILA Med. & Clinical Servs. Fund by & Through Capo v. Catucci, 60 F. Supp. 2d 194, 208-09 (S.D.N.Y. 1999).

Lee's § 664 claim, insofar as it exists, is dismissed.

C.  ERISA Claims

Lee asserts two ERISA claims: (1) that Butts breached his fiduciary duties as set forth in 29 U.S.C. § 1104 and § 1106; (2) that Butts discharged, discriminated against, and disciplined Lee in retaliation for exercising her rights under the provisions of NGH's employee benefit plan in violation of 29 U.S.C. § 1140. Compl. ¶¶ 25-34.

1. Breach of Fiduciary Duty

Lee's claim that Butts breached his fiduciary duty presumes that Butts is a fiduciary. Under ERISA, a person is a "fiduciary with respect to a plan to the extent (i) he exercises...any authority or control respecting...disposition of its assets...or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). "[W]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987) (citation omitted).

The evidence on both sides is scant. Butts claims that, "as Chairman of the NGH Board of Directors," he had "no involvement" with the employee benefit plans. Def. Mem. 16. This conclusory statement is wholly unsupported, not necessarily because no facts exist that might substantiate this claim, but because Butts has failed to cite anything. Yet it is his burden, as the movant, "to demonstrate that no genuine

9

issue respecting any material fact exists." Gallo, 22 F.3d at 1223 (emphasis supplied). This requires either "citing to particular parts of materials in the record ... or showing that the materials cited do not establish the presence or absence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1) (emphasis added). Butts has done none of this. This sort of briefing forces the Court to comb the record, speculate, and do the litigant's work for him. But as Judge Irving Goldberg put it: "Judges are not ferrets!" Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., 695 F.2d 839, 847 (5th Cir. 1983). If Butts needed more facts to bolster his case, he should have served discovery or deposition requests on Lee. This Court's understanding is that he did not. See Pl.'s Mem. 9.

Unfortunately, Lee's evidence is only marginally better; but it is enough, given Butts' bare assertions, to survive the present motion. Lee notes that Butts admitted that "he tried to get New York State to give NGH time to pay its unfunded pension obligations." Pl.'s Mem. 19 (citing Cho. Aff. Ex. J, at 37-38). In other words, Lee argues that Butts, in order to negotiate with New York State over unpaid pensions, must have had some authority or control over those unpaid pensions. See 29 U.S.C. § 1002(21)(A)(i), (iii). We agree.

"The fiduciary standard imposed by ERISA requires the application of a reasonableness standard. Rarely will such a determination be appropriate on a motion for summary judgment." Bd. of Trs. of the S. Cal. IBEW-ENCA Defined Contribution Plan v. Bank of N.Y. Mellon Corp., No. 09 Civ. 6273, 2007 U.S. Dist. LEXIS 142367, at *14 (S.D.N.Y. Dec. 9, 2011). Given Lee's claims—substantially unopposed by Butts—that her pension monies were mishandled, diverted, and (at the very least) not returned to her, we hold that genuine, disputed questions of fact exist whether Butts discharged his duties with the care, skill, prudence, and diligence under the circumstances then prevailing, see 29 U.S.C. § 1104(a)(1)(B); whether Butts discharged his duties with respect to the pension plan solely in the interest of and for the exclusive purpose of providing benefits to the participants and beneficiaries, see 29 U.S.C. § 1104(a)(1)(A)(i); and whether Butts engaged in (or sanctioned) any of the prohibited transactions listed in 29 U.S.C. § 1106.

Butts' motion for summary judgment is denied.

2. Unlawful Retaliation

29 U.S.C. § 1140 provides that "i[t] shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary...for the purpose of interfering with the attainment of any right to which such participant may become entitled to under [an employee benefit plan]." Lee claims, in effect, that she was

11

unlawfully terminated for attempting to secure her pension plan monies.

Butts does not directly address this charge, but he does argue, separately, that "it is clear that the reasons detailed in Exhibit F to the Butts Affidavit and in the Maher and Kirton Affirmations annexed hereto, constitute legitimate, non-retaliatory reasons for the employer's actions." Def. Mem. 14. Exhibit F as well as the Maher and Kirton Affirmations appear to lend support to the argument that Lee was fired for having improperly opened bank accounts for the Housing Corporation. See, e.g., Butts Aff. Ex. F (letter from NGH's counsel stating that Lee's opening of the bank accounts "amounts to a breach of [her] fiduciary obligations" to the Corporation). In other words, Butts argues that Lee was not improperly terminated for attempting to address the alleged ERISA violations; rather she was terminated because the unauthorized opening of bank accounts was a breach of her "fiduciary obligations to both the Corporation and the hospital." Butts Aff. Ex. F.

But this argument, and the factual record that supports it, is not uncontested: Lee has presented evidence that the opening of the bank accounts was expressly authorized by HUD, that the Corporation and NGH were aware of this, and that NGH's accusations are without merit. See, e.g., Cho Aff. Ex. C (affirmation of Michael Piantosi, HUD property manager); Cho Aff. Ex. D (affirmation of Kara Simpson, former Chairperson of

12

the Board of Directors of the Corporation). It is enough that the propriety of Lee's opening the bank accounts is disputed.

Butts' motion for summary judgment is denied.

IV. CONCLUSION

For the foregoing reasons, Butts' motion for summary judgment is GRANTED with respect to Lee's claims for racial and sexual-orientation discrimination and GRANTED with respect to Lee's 18 U.S.C. § 664 claim. Butts' motion is DENIED in all other respects.*

We take the additional step of REFERRING this case to Magistrate Judge Andrew Peck in the hope that the parties can resolve their dispute consensually.

SO ORDERED.

August __/__, 2012
New York, NY

_____
U.S.D.J.

---

* This Court has considered all of the parties' other arguments and found them to be moot or without merit.

13